Hopkins, Senator.
Was there not testimony given from which a jury might find that the plaintiff intended to answer the order of the defendant for the 250 barrels of cement, by delivering to him the 260 barrels 1 The plaintiff at no time claimed any thing for the excess, and has not sued for it. The excess would hardly seem to be so large as to preclude a jury from inferring that it was only added to make sure of having delivered enough; there being some doubt perhaps as to the manner in which the defendant might wish the quantity determined, the article moreover being liable to some loss by leakage, and the excess being of no very great value as compared with the anticipated profit upon the whole.
An over performance of the contract could only he beneficial to the defendant. If the rule is to be a rigid one that no more shall be delivered than is contracted for, then the least overplus must vitiate the delivery. But if some latitude is to be allowed for the sake of abundant caution, as I think there should be, who is *212 to decide how much excess there may be without vitiating the delivery % It sdems to me that this is a question for the jury alone to decide, under all the varying circumstances of each case.
But I think there was testimony in this case showing that the defendant waived the objection, even if he ever made any, that there was too much delivered. He did not make that an objection at any time, though, on the arrival of the vessel, he replied to the statement of the captain, in respect to the number of barrels, that there was more than he sent for. The fact which he admitted at the same time, viz. that he had already bought another lot at one or two shillings -less per barrel, indicates more probably the true objection. His subsequent letter, written under advice of counsel, stating in so many words that two hundred and fifty barrels had been sent, put the objection wholly upon other grounds.
I think the circuit judge erred in5 withholding the case from the jury. And I cannot forbear the expression of the opinion, in which I know many able and upright members of the legal profession, as well as others, concur, that it is becoming matter of just apprehension that our courts do not sufficiently appreciate the rights and duties of jurors.
I think the judgment should be reversed, and a new trial granted.
Lott, Senator.
The declaration in this case contains counts for goods and cement bargained and sold, and also for goods and cement sold and delivered. The plaintiff was nonsuited, and the supreme court refused to grant a new trial. In their opinion they say: “ The difficulty of the plaintiff lies in not having numerically complied with the order, which was for two hundred and fifty, and not two hundred and sixty barrels.” Was that fact of itself sufficient to warrant a nonsuit 1 It is true that, while any act is to be done by the vendor in order to ascertain the value, quantity or quality of the.goods, the delivery is not complete. (Long On Sales, 267, ed. of 1839; Comyn On Contracts, 164, et seq.; Outwater v. Dodge, 7 Cowen, 85.) *213 This rule is not questioned; but the present case does not, in my opinion, fall within it.
Although the order given by the defendant was to send two hundred and fifty barrels; yet the whole quantity shipped was forwarded as a compliance with it. No selection was to be made of any portion from the common bulk; nor did any thing remain to be done by the vendor. Indeed, the defendant himself, in his letter apprising the plaintiff of his rejection of the cement, expressly admits that it was sent in compliance with the order, and claims his discharge from liability on. the distinct and specific ground that it would not pass inspection at the works. If that had been one of the terms of the contract, I ,concede the delivery would not have been complete until the cement had been inspected. That objection was, however, not raised at the trial; nor is it alluded to in the decision of the court below.
Again, even if the shipment of the cement did not alone constitute a complete delivery, by reason of the excess in the quantity ; yet certainly there were facts and circumstances attending the offer of delivery, and the defendant’s refusal to accept, which called for a submission of the case to the jury for their decision. (De Ridder v. McKnight, 13 Johns. Rep. 294.)
The nonsuit was in my opinion improperly granted, and the judgment of the court below should be reversed.
Strong, Senator.
The question in this case is, whether the count in the declaration for goods bargained and sold, or the one for goods sold and delivered, is so far sustained by the evidence, that the matter should have been submitted to the jury. Two hundred and fifty barrels of cement were ordered by the defendant, and two hundred and sixty barrels were forwarded by the plaintiff. The defendant refused to accept, not on the ground now set up that the number of barrels was greater than he had directed, and that he was not bound to make a selection; but because the cement was not as good as that for which he had sent. In his letter to the plaintiff, written a few days afterwards, he distinctly recognizes a compliance with his order on the part of the plaintiff, as to the number of barrels, but reiterates substantially the objection he *214 had first taken. If the plaintiff forwarded the two hundred and sixty barrels as and for two hundred and fifty barrels, in order that no dissatisfaction might exist as to the quantity, or finally other reason, he would be entitled to recover the value of the two hundred and fifty barrels; and whether he did so, was a proper question for the jury to decide. On the other hand, if the two hundred and sixty barrels were not sent as a mere compliance with the order, the defendant was not bound either to make a selection of two hundred and fifty barrels out of the larger number, or to take the extra ten barrels and pay for them; and should a jury find that such was the fact, as the sale would then' be incomplete as well for two hundred and fifty as for two hundred and sixty barrels, the defendant would be entitled to their verdict. The plaintiff is entitled to have this question submitted to a jury, and therefore the judgment of the supreme court should be reversed.
Bockee, Porter, Putnam, Rhoades and Wright, Senators, also delivered opinions in favor of reversing the judgment of the supreme court, on the ground that the question should have been submitted to the jury.
Lawrence, Senator.
If the plaintiff had delivered two hundred and fifty barrels of cement on board the canal boat at Chittenango, according to the terms of the defendant’s order, the title would have immediately passed; for it might then have been contended with propriety that the carrier was the agent of the defendant. But instead of the two hundred and fifty barrels, the plaintiff forwarded a larger quantity of cement, viz. two hundred and sixty barrels, estimating by count, and two hundred and seventy, estimating by weight; thus refusing, in legal effect at least, to comply with the defendant’s order, and proposing a different arrangement. The carrier was not the defendant’s agent for the purpose of consenting to this proposition, and as the defendant himself has not consented to it, the title to the cement remains in the plaintiff to this day. The evi *215 dence given at the trial, therefore, failed to support either count of the declaration.
But it is said that the cement forwarded, though exceeding the quantity ordered by at least ten barrels, may have been intended by the plaintiff as a compliance with the defendant’s request, and that the circuit judge should therefore have submitted the case to the jury. The plaintiff, however, never intimated any thing of the kind to the defendant, nor to the carrier who it is contended was his agent. On the contrary, the carrier was directed to collect freight on two hundred and sixty barrels; and from this circumstance it is fair to presume that the plaintiff originally intended to exact payment for the whole number. Indeed the point seems to be put at rest by the testimony of Cobb, who swore on the trial that “ in the plaintiff’s books the charge is made out to Thompson by weight, indicating the number of barrels;” thus showing conclusively that the entire quantity forwarded was charged to the defendant. The captain of the schooner testified, moreover, that he “ did not offer to the defendant two hundred and fifty barrels only, nor tell him he could have any quantity less than two hundred and sixty;” and this too after he had been apprised that the excess was an objection. The defendant was therefore left to suppose that if he accepted the cement, he must pay for the whole which- had been forwarded, and not merely for what he had ordered. I think he had a right to act upon this view of the case; and if he has thus acted, though under a mistake- in respect to the intentions of the plaintiff, the consequences should be borne by the party who caused that mistake. To contend that the defendant, in the absence of all explanation, might have received the two hundred and sixty or seventy barrels of cement, without subjecting himself to liability for more than" the price of two hundred and fifty barrels, seems to me to be doing violence to the plainest principles of common sense.
Considerable reliance was placed by the counsel for the plaintiff upon the defendant’s letter of October 11th, 1838, as containing an admission -that the two hundred and fifty barrels óf *216 cement had been sent in compliance with the order. But I do not think the letter entitled to much weight. The main object of it appears to have been to notify the plaintiff that the defendant meant to have nothing to do with the cement. In giving effect to the letter, it should be considered as a whole, and the same credit be given to that part which is in favor of the defendant, as to that which is said to operate against him. This I understand to be a fundamental rule which is never to he lost sight of in construing the admissions or declarations of a party; and if it be applied here, the letter in question will be found to amount to nothing less than a full and perfect denial that the order had been complied with. For if it admits, as is contended, that the quantity of cement ordered had been forwarded, it insists at the same time that the quality was not good. The letter, therefore, leaves the case precisely as it would have stood had none been written.
But even if the letter be regarded as an admission that the plaintiff intended the cement forwarded should be received as a compliance with the order, how does the case then stand ? That the quantity sent was in point of fact materially greater than the one ordered by at least ten barrels, has not been disputed in any stage of these proceedings. It is difficult to see, therefore, what the intention of the plaintiff has to do with the question. The order called upon him for the performance of an act which was specifically pointed out; and unless be has performed it, whatever may have been his intentions, he can claim nothing from the defendant.
If the view I have taken of this case be correct, the evidence given at the trial left no doubt - that the plaintiff had failed to make out a right of recoveryand under such circumstances it was not only proper for the circuit judge to order a nonsuit, but it was his duty to do so. The power of nonsuiting should not be exercised, I admit, where there is reasonable ground for dispute as to the facts upon which the case must turn; but where the essential facts are uncontroverted, and it is perfectly clear that the action is without foundation, I can see no good reason for sending the case to a jury.
*217 I am of opinion that the judgment of the supreme court is right, and. shall therefore vote to affirm it.
On the question being put, “Shall this judgment be reversed?” all the members of the court present who heard the argument, except Lawrence and Scovil, Senators, voted for reversal.
Judgment reversed.